FILED

2008 Aug-19  PM 08:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **STACEY SEWELL**, *non compos mentis*,  ` ) <br> **by and through her mother and next friend,** ) <br> **ANNIE SEWELL;  and ANNIE SEWELL**, ) <br> **in her individual capacity,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> **vs.** ) <br> ) <br> **BARGE, WAGGONER, SUMNER &** ) <br> **CANNON, INC., a corporation; APAC** ) <br> **SOUTHEAST, INC**., **a corporation**; **and** ) <br> **APAC, INC., a corporation,** ) <br> ) <br> Defendants. ) | Civil Action Number <br> **5:07-cv-0447-UWC** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON PROPOSED *PRO TANTO* SETTLEMENT BETWEEN
PLAINTIFF STACEY SEWELL AND THE APAC DEFENDANTS**

Plaintiff Stacey Sewell, by and through her mother and next friend, Annie Sewell, has reached a proposed *pro tanto* settlement with APAC-Southeast, Inc. and Apac, Inc. ("APAC"),  two of the three Defendants in this action. The Court must determine whether the proposed settlement is fair, reasonable, and in the best interest of the incapacitated adult Plaintiff.

Based on the following Findings of Fact, the Court concludes that the Settlement Agreement is due to be approved, notwithstanding the objection of remaining Defendant Barge, Waggoner, Sumner & Cannon, Inc. ("BWSC").[1]

---

[1]BWSC objection is that the settlement amount is unreasonably low, in view of Plaintiff's anticipated future medical needs. The objection is based on the assumption that at trial, Plaintiff will prevail on her claims against APAC.

Findings of Fact

1. This case involves a February 3, 2001, motor vehicle accident in the City of Huntsville, Madison County, Alabama. As Plaintiff Stacey Sewell traversed the intersection of Golf Road and Memorial Parkway, her vehicle was struck by a vehicle driven by Eric Daniel Clark.

2. Plaintiff sustained a traumatic brain injury as a result of the accident. She was twenty-one years old at the time.

3. Plaintiff filed this action on March 20, 2007, against APAC and BWSC.

4. Plaintiff's mother, Annie Sewell, has been duly appointed by the Probate Court of Limestone County, Alabama, as her legal guardian.

5. In her complaint, Plaintiff alleges, *inter alia,* that the traffic signalization system as designed by BWSC, and the roadway intersection as constructed by APAC,  was unreasonably dangerous and defective. She further asserts claims of negligence and wantonness under the Alabama Extended Manufacturers Liability Act ("AEMLA")  Plaintiff also contends that the Defendants  failed to warn of the dangers associated with the placement and sequencing of the traffic lights at the accident scene.

6. Memorial Parkway is a four-lane roadway with the northbound and southbound traffic separated by wide concrete medians. Pier columns that support an overhead bridge are located on the two closest medians to the Memorial Parkway-Golf Road intersections.  At the intersection of Golf Road, a separate westbound turn lane branches off from the two-lane northbound traffic at the stop bar. Both the west and east bound traffic on Golf Road are directed under a bridge overpass.

7. Plaintiff contents that the because of the unique design and construction of the subject intersection, the 160 feet width separation of the Memorial Parkway northbound and southbound traffic lanes, the intersection formed with Golf Road

should have been regarded as two intersections requiring the placement of two additional signals to control both the west bound and east bound traffic at the intersection of Memorial Parkway and Golf Road.

8. The Defendants deny liability for the accident. BWSC maintains that, in any event, its design plans were not followed in the construction of the intersection. All Defendants assert contributory negligence as an affirmative defense, citing Plaintiff's alleged failure to wear a seat belt and her alleged disregard of a red light.

9. Plaintiff's injuries arising from the accident are quite extensive. Her traumatic brain injury was the result of the shearing of her brain stem by the impact of the collision. She has no movement in any of her appendages.  and she is incontinent. She is totally incapable of performing the activities of daily living and self-care. Her medical condition renders her susceptible to recurrent infections and bouts of pneumonia. Since her injury, she has been hospitalized numerous times for pneumonia.   Since her discharge from the hospital in Huntsville and the Rehabilitation Institute of Chicago in April 2001, Plaintiff has lived with her parents, both presently 59 years of age, in their Athens, Alabama home.

10. Plaintiff's cognitive function is medically described as  "arousable but vegetative."[2]

---

[2]Plaintiff's daily routine starts at 7:30 am. Using a Hoyer lift, an apparatus which lifts her from her hospital bed, she is placed in a wheelchair. After being dressed, braces are placed on her legs and plastic splints on her hands. She is then  wheeled from her bedroom into the kitchen where an oral hygiene regimen is followed, which includes the use of a suction machine because of difficulty swallowing. She is fed breakfast through a peg tube inserted into her abdomen. Her medications are administered and her personal grooming of face washing, application of lotion, creams and topical ointments to prevent skin breakdown is completed. After breakfast, the Bible is read and background music is played as therapy.

At noon, the sitter does range of motion exercises on Plaintiff's feet. Afterwards, she is placed back in the bed for a mid-day nap after undergoing thirty-minutes of a vibrating back massage to clear her lungs. She also has breathing treatments daily. At 3:00 p.m. she is removed from the bed and placed back in the chair for lunch. She remains in the wheel chair until 8:00 p.m. when she is placed on the vibrating mattress again and her arms and legs are exercised for

11. Plaintiff's mother is her principal caregiver, providing assistance at nights and on weekends. Plaintiff's father recently suffered a massive heart attack, and he is unable to provide assistance with her care.

12. Plaintiff's future medical needs will cost are estimated to range between five and ten million dollars.

13. Plaintiff receives approximately $440.00 per month from the Social Security Administration as disability/supplemental security income benefits.  Her primary health insurance is provided by Medicare, with secondary coverage through a Blue Cross Blue Shield group policy.  She has no dental or vision coverage

14. During the discovery phase of this litigation, Plaintiff's counsel and counsel for APAC engaged in arms length, hard-fought settlement negotiations. These negotiations resulted in the proposed settlement of Plaintiff's claims against APAC.

15. In agreeing to the settlement, APAC considered three primary factors: (1) the lack of a comparative negligence doctrine under Alabama law, (2) the severity of Plaintiff's injuries, (3) the unavailability of its own records relating to the construction of the project, and (4) the costs of defending at trial.

16. Plaintiff's counsel, in agreeing to the settlement, considered (1) the viability of the contributory negligence defense in light of Plaintiff's alleged failure

---

sixty minutes. Dinner is served via her peg tube at 10:00 pm followed by her 11:00 p.m. bedtime.

Plaintiff's mother and guardian sleeps in her room to monitor her breathing. She has coughing spells throughout the night and requires the use of the suction machine. With special equipment, her mother checks her oxygen level. There is an oxygen tank in the home if an emergency arises.  Plaintiff's body must be rotated every two to three hours during sleep to prevent the onset of decubitus ulcers or bedsores.

Plaintiff requires a sitter Monday through Friday from 7:30 a.m. until 3:00 p.m.

Since the recent massive heart attack of Plaintiff's father, her mother and guardian is her principal caregiver.

-5-

to wear a seat belt and alleged disregard of the traffic signal, (2) the enhanced chances of prevailing against the alleged principal tortfeasor, BWSC, with the cooperation and assistance of APAC, and (3) the general uncertainty of a trial.

17. Under the terms of the Settlement Agreement and Pro Tanto General Release executed by Annie Sewell on July 24, 2008, Plaintiff will receive from APAC the sum of $400,000.00 in full settlement of any and all claims, known or unknown against them arising out of the accident. APAC does not admit liability in any respect.

18. Under the terms of the fee agreement between guardian Annie Sewell and Plaintiff's counsel, said counsel is entitled to forty-five (45%) percent of any recovery, after deduction of expenses.   The contingency fee rate is usual and customary in this kind of litigation.

19. Plaintiff's litigation expenses totaled $120,659.52 as of August 1, 2008.[3]

20. The net recovery of Plaintiff from this proposed settlement ranges between $100,000 to $160,000.[4]

21. In her comprehensive report, the guardian *ad litem* recommends approval of the settlement.

22. At the *pro ami* hearing, Plaintiff's mother and guardian testified in favor of the settlement.

23. Plaintiff was present in person at the *pro ami* hearing; and the Court observed her physical condition and demeanor.

---

[3]Because Plaintiff's claims against BWSC are yet unresolved, there has been no determination of how the expenses will be allocated among the Defendants should Plaintiff ultimately prevail against BWSC.

[4]Again, the subrogation issue has not been settled, since the case proceeds against BWSC.

-6-

24. Court-appointed guardian *ad litem* J. Richet Pearson, Esq.,  has reasonably expended 22.6 hours in the investigation and compilation of her Report to the Court.

25. The guardian *ad litem*'s hourly rate is $250, which the Court finds to be reasonable.

26. The Guardian *ad litem* has reasonably incurred expenses of $102.50 in the performance of her duties in this action..

Conclusions of Law

1. Based on the foregoing Findings of Fact, the Court concludes that the proposed settlement is fair, reasonable, and in the best interest of the incapacitated Plaintiff.

2. For her services rendered herein, the Guardian *ad litem* is entitled to a fee of $5650.00; and reimbursement of expenses in the amount of $102.50, to be paid by APAC.

By separate order, the Settlement Agreement will be approved.

_____

U.W. Clemon

United States District Judge

-7-